No. 43,969

The State of Kansas, ex rel. Robert C. Londerholm (Substituted for William M. Ferguson), Attorney General, *Appellee*, v. The City of Galena and Milton Moeller, Jim Monte, Rex Smith, Stephen Langford, Charles Cole, Wilbur J. Moody, Robert Scott, Orin Clifford, Clair Shaw, members of the City Council of the City of Galena, and Homer McAfee, Mayor of the City of Galena, or their successors, *Appellants*.

(401 P. 2d 662)

Opinion filed May 4, 1965.

*J. John Marshall*, of Pittsburg, argued the cause and was on the brief for the appellants.

*John W. Cooper* and *Paul Armstrong*, special assistant attorneys general, argued the cause, and *Robert C. Londerholm*, attorney general, and *J. Richard Foth*, assistant attorney general, were with them on the brief for the appellee.

The opinion of the court was delivered by

Robb, J.: This is an appeal by the defendant city of Galena from the trial court's order granting a peremptory writ of mandamus against it and overruling its motion for new trial.

Defendant's complaints of error are that the trial court erred (1) in overruling its motion to quash plaintiff's motion for writ of mandamus (2) in granting the peremptory writ of mandamus and (3) in overruling its motion for new trial.

On December 15, 1961, the Kansas State Board of Health (hereafter referred to as the board) in pertinent parts of its order to chlorinate directed to the defendant city of Galena found that the city's good quality of water at the source did not safeguard the

consumers' health because of danger of contamination in the distribution system; that continuous chlorination treatment and maintenance in the distribution system would provide substantial protection against contamination and disease; that on May 25, 1956, the city had been instructed by the board to chlorinate its water on or before January 1, 1958; that on June 17, 1960, the board had again formally ordered the city to chlorinate its water supply on or before September 21, 1960; that the city was reported willing to chlorinate its water supply but intended to do so only at some future indefinite date; that the city's failure to chlorinate its water supply is prejudicial to the public health and that the interests of public health require prompt installation of suitable chlorination facilities. Under the provisions of K. S. A. 65-163 the board ordered the city to purchase and install adequate facilities for chlorination of its public water supply, that such facilities were to be installed promptly and within a reasonable time thereafter, and subsequently the city should continuously maintain such facilities and process.

Upon the board's motion for issuance of an alternative writ showing the city's refusal and failure to comply with the board's order of December 15, 1961, the trial court on April 12, 1962, ordered the issuance of the writ commanding the city to comply immediately with the board's order or show cause on or before July 13, 1962, why the city should not be required to do as commanded.

On March 1, 1963, the general demurrer of the city and its motion to quash the alternative writ were overruled and the city was granted thirty days in which to answer.

The city's answer thereafter filed made certain formal admissions and then set out a general denial. It further answered that at all pertinent times mentioned the city had maintained a good and sufficiently healthful and pure water supply for all of its inhabitants and the patrons of its water department; the cost of chlorinating the water supply would exceed $2,000 which, under K. S. A. 65-171 limiting such cost to $1,000, would require the change in water supply to be passed upon by the qualified electors in the city at a general or special election; no attempt had been made by the board to cause, or attempt to cause, the issue to be so presented to the electors.

On October 22, 1963, the parties stipulated to certain facts including those stating that the city had not complied with the order of the board to chlorinate its water, dated December 15, 1961, nor

had the city appealed from the order to the district court within thirty days. It was further stipulated the cost of chlorination would exceed $2,000, the question had never been submitted to the city's electors, and that monthly and semi-monthly reports concerning the purity and fitness of the water supply for a part of 1960, and for all of 1961, 1962, and 1963 reflected that the water was pure and fit for human consumption. The analysis of the water samples had been conducted by the board.

On December 17, 1963, in its formal journal entry of judgment, the trial court adopted the agreed facts as its findings, and further found the board had legal authority to order the city to chlorinate its water supply, the city had a clear legal duty to comply therewith and that the provisions of K. S. A. 65-171 pertaining to ". . . the supply of water for any municipal water plant . . ." are not applicable concerning an order for chlorination of a public water supply. Since no reason was shown why a peremptory writ should not issue, the trial court commanded the city to provide chlorination of its public water supply within a reasonable time. The court reserved jurisdiction of the cause.

On January 22, 1964, the city's motion for new trial was overruled. Hence this appeal.

The city's contentions are based on the applicability of K. S. A. 65-171 which provides:

"That nothing in this act shall permit the board of health to *change the supply of water* for any municipal water plant where the cost of such change would exceed one thousand dollars without first submitting the same to the qualified electors at a general or special election." (Our emphasis.)

We think the above statute is unequivocal, clear, and unambiguous and would be controlling if an order of the board undertook to *change the source of supply* of water for any municipal water plant because in that event an election would have to be conducted should the cost of the change exceed $1,000. However, under the circumstances here involved, we agree with the trial court and the board that K. S. A. 65-171 has no application because nothing in the board's order requires a change in the *source of supply* of water that goes into the city's water plant. As contended by the board, we believe the order is controlled by the provisions of K. S. A. 65-163. The statute is quite long and we shall merely state that it likewise is unequivocal, clear, and unambiguous and included among its provisions are:

". . . no person, company, corporation, institution or municipality *shall supply water for domestic purposes to the public* within the state from or by means of any waterworks that shall have been constructed . . . *without a written permit from the state board of health.* . . ." (Our emphasis.)

The order of the board in this case is simply informing the city that the water which it furnishes for domestic purposes to the public must be chlorinated before it is safe for public consumption.

No mention is made of the *source of supply* of the water going *into* the waterworks or the municipal water plant. Reference is made only to the water that is furnished by such water plant when it is ready to be consumed for domestic purposes by the public.

We, therefore, conclude the trial court correctly decided that K. S. A. 65-171 has no application herein and no election is required, that the controlling statute is K. S. A. 65-163, and the order granting the peremptory writ was correct.

Judgment affirmed.